# WILLIAM SAVAGE AND OTHERS, RESPONDENTS, *v.* CITY OF BUFFALO, APPELLANT.

*Eminent domain — the power given to the common council of a city to determine what lands are benefited by an improvement cannot be delegated—chap.* 519, *Laws of* 1870.

The charter of the city of Buffalo treating of the duty of its common council in raising the money requisite to pay for property taken, and the method of so doing, provides as follows: "The amount which is to be raised by local assessment it (the common council) shall cause to be assessed upon the real estate benefited;" and, further, that "the assessors shall constitute a board of valuation and assessment;" and, further, that "they (the assessors) shall assess the whole amount upon the parcels of land benefited by the work, act or improvement in proportion to such benefit." * * *

The city of Buffalo took lands for a market, and thereafter the common council, by resolution, determined that one-half of the expense should be raised by general tax and one-half by local assessment; and by said resolution it further directed the board of assessors to impose the local assessment upon the real estate benefited by the improvement. The common council did not at any time determine what particular lands would be benefited.

In an action to vacate an assessment subsequently made by the assessors upon lands selected by them therefor a demurrer was interposed to the complaint.

*Held*, that no power to determine the lands benefited by the improvement was given to the assessors.

That such a power could not be delegated by the common council to the assessors.

That the proportion of benefit to the property assessed was to be determined by the common council, and not by the assessors.

*Semble*, that an assessment to pay for the site of a city market, from which certain property was omitted because it might be thereafter assessed for another market, was improper and illegal.

APPEAL by the defendant, the City of Buffalo, from an interlocutory judgment, entered in the clerk's office of Erie county on the 5th day of September, 1890, upon a decision made at Special Term in said county upon a trial of issues of law, which judgment overruled the demurrer interposed by said defendant to the complaint.

*Philip A. Laing*, for the appellant.

*Stephen Lockwood*, for the respondents.

CORLETT, J.:

Section 1 of title 3 of the charter of the city of Buffalo, chapter 519, Laws of 1870, provides that "the city of Buffalo shall hold its

corporate meetings, for the exercise of its corporate powers, the performance of its corporate duties, and the management of its property and affairs, by means of a common council, composed of the aldermen of the several wards of the city, a majority of whom shall constitute a quorum." The legislative power of the city is vested in the common council.

Section 14 of title 8 is as follows:

"Upon the confirmation of the report of the commissioners, the common council shall ascertain the amount of money required to pay the compensation awarded and the costs of the proceedings; and shall, when it is not provided in this act that the expenses of the improvement for which such lands were taken shall be assessed upon a certain district, or upon the parcels of land benefited by the improvements, determine whether the whole of such amount, or any part of it, shall be raised by general tax or by local assessment. The amount which is to be raised by general tax shall be included in and raised in the general tax next thereafter to be levied. The amount which is to be raised by local assessment it shall cause to be assessed upon the *real estate benefited.*"

Section 11, title 9, confers power upon the city to construct, maintain and repair a city hall, markets, public buildings, etc.

Section 39, title 2, provides that " the assessors shall constitute a board of valuation and assessment, and a majority of them shall constitute a quorum."

Section 1 of title 8 confers power upon the city to take lands for public or corporate purposes.

On the 1st day of October, 1888, the common council passed a resolution, of which the following is a copy:

" That the common council of the city of Buffalo intends to take the land and property necessary for public market purposes described as follows: All that certain piece or parcel of land situate in the city of Buffalo, county of Erie and State of New York, bounded and described as follows: Beginning at a point in the easterly line of Michigan street, at its intersection with the southerly line of Fulton street, running thence southerly along the easterly line of Michigan street 302 feet, more or less, to the north line of Elk street; thence easterly, at right angles along the northerly line of Elk street 127 feet, more or less, to the westerly line of West

Market street; thence northerly, and at right angles along the westerly line of West Market street 302 feet, more or less, to the southerly line of Fulton street; thence westerly, and at right angles along the southerly line of Fulton street, 127 feet to the easterly line of Michigan street, the place of beginning; and that the city clerk be, and he is hereby, directed to cause this notice of such intention to be duly published."

On the 20th day of May, 1889, the common council passed the following resolutions:

"*Resolved*, That the common council has ascertained and hereby determines the amount of money required to pay the compensation awarded in and the costs and expenses of said proceedings to be the sum of $169,097.50; and

"*Resolved*, That it be, and it is hereby determined that one-half of said sum, to wit, $84,548.75, be raised by general tax; and that one-half of said sum, to wit, $84,548.75, be raised by local assessment; and

"*Resolved*, That the board of assessors be and they are hereby directed to assess the said sum of $84,548.75 upon the real estate benefited by such improvement, to wit: The improvement of acquiring the block of land bounded by Fulton street on the north, West Market street on the east, Elk street on the south, and Michigan street on the west, for public market purposes, to be known as the extension of the Elk street market, in proportion to such benefit."

The common council did not adjudge or determine what particular land would be benefited by the improvement. The board of assessors assumed to exercise that power, and so made their assessment.

The assessors, in determining what property was benefited by the improvement, excluded the eleventh and twelfth wards of the city upon the sole ground that the lands included in those wards would be liable at some future time to be assessed for a public market to be located in one or the other of said wards. This action was brought to vacate and set aside that assessment. The complaint alleges the above facts. The defendant demurred to the complaint upon the ground that it failed to state facts constituting a cause of action.

The demurrer was heard at a Special Term of this court, held in July, 1890. The demurrer was overruled, and the interlocutory judgment appealed from was entered.

The learned counsel for the appellant insists that the complaint is defective in not clearly stating the grounds upon which the assessment was void. It is well settled that, on demurrer, all reasonable intendments will be indulged in in support of the pleading demurred to. (*Lorillard* v. *Clyde*, 86 N. Y., 384; *Marie et al.* v. *Garrison*, 83 id., 14.) The allegations in the complaint were sufficient.

Property assessed for local improvements may be sold if the assessments are not paid, and the owner's title divested. Strict compliance with the law is, therefore, required. (*Stebbins et al.* v. *Kay et al.*, 123 N. Y., 31; *Merrit et al.* v. *Village of Portchester*, 71 id., 309; *Angel* v. *Town of Hume*, 17 Hun, 374.)

Where the board or officers materially depart from the authority delegated, they act without jurisdiction. (*Cagwin* v. *Town of Hancock*, 84 N. Y., 532.) And a right of action is vested in the persons injured. (*Hassen* v. *City of Rochester*, 65 N. Y., 516.) A ratification of the assessors' report by the common council did not render it valid. (*Danks* v. *Quackenbush*, 3 Denio, 594.)

The only express power conferred upon assessors is to value and assess property. There is nothing in the charter which confers authority upon them to determine what particular property will be benefited by the improvement. The existence of such power might involve serious consequences. The city of Buffalo, through its counsel, should determine and specify the property benefited. The board of assessors could then value that property and make the assessment. The mischief of such authority is illustrated in this case, for, in addition to omitting wards and parts of wards proximate to the market, the board refused to assess any of the property of the eleventh or twelfth wards for the reason that those wards might be liable thereafter to be assessed for another public market. In taking property the common council should not be allowed to relieve itself from responsibility by imposing its duties upon the assessors.

The learned counsel for the city argues with great earnestness that the board of assessors had power, not only to value the property and make the assessment, but also to determine the lands which would be benefited by the improvement, including the proportions, and cites title 6, sections 1 to 3, inclusive, in support of this contention.

Section 3 is : " They shall assess the whole amount upon the parcels of land benefited by the work, act or improvement in proportion to such benefit, except in those cases in which, by this act, the assessment is to be made upon a different principle, and in those cases they shall make the assessment upon the principle prescribed for each case, pursuant to this act."

It will be observed that this section does not, in *express words*, confer power upon the board of assessors to determine the particular property that would be benefited. The section is entirely consistent with the assumption that this power is exclusively vested in the city through its council. The section directs that the assessment shall be made in proportion to the benefits conferred. But it does not state whether the council or board of assessors shall determine what those portions are. In terms it only requires that the assessment shall be made in the manner therein directed ; but it fails to prescribe what body shall determine and designate the property. The other two sections have no application.

The resolution of the council was to the effect that the assessors should levy the sum of $84,548.75 upon the real estate benefited by the improvement. It then states the nature of that improvement, but omits to show what property is benefited, or the proportions.

While the section last quoted requires the assessment to be made on the parcels of land benefited, it omits to specify those particular parts. It requires no argument to prove, for it is self evident that in nearly every case the proportion of benefit will be unequal. One block, or part of a block, may be benefited five per cent ; another ten, then twenty, and so until par is reached, the adjudication showing the proportion of benefit conferred upon particular parcels of the property. Section 3 does not enact or state what body or tribunal shall decide the proportion of benefit which will result from the improvement. If the body authorized to decide that question shall adjudge that different portions were benefited a certain percentage in unequal degrees, then the propriety of section 3 would at once appear.

The meaning of the provision " they shall assess the whole amount (ordered to be assessed) upon the parcels of land benefited by the work, act or improvement, in proportion to such benefit," is not obscure. Abundant caution induced the legislature to compel

the assessors to adjudge valuations and impose assessments upon such adjudications; that is, a certain percentage would be imposed upon one piece of property, and so through the list. The assessors, therefore, are commanded to make their assessment upon that basis. If the city is required to make the determination, then its attorney would represent it in protecting the municipality, including its property owners and the citizens affected. Appropriate ordinances would be adopted defining the mode of procedure, and the persons affected would have full opportunity to be heard through counsel or otherwise. Then when an adjudication was made showing the parcels to be benefited, and the proportions, the result would be put upon record, and parties deeming themselves aggrieved could resort to legal methods of redress. If errors were committed to the prejudice of the city or of the citizens, relief might be obtained. If, on the other hand, the power rests in the assessors, they have practically arbitrary authority. The dignity of real estate, and the caution which must be exercised in transferring title from the owner to another has its root, in the very nature of things, in the origin of the law and the rights of man, and extends back beyond "the time whereof the memory of man runneth not to the contrary."

Assessors are not elected on account of their judicial ability or aptness in the construction of statutes. They are chosen on account of their supposed general knowledge of the value of property. When a tax is general, embracing all the property in the corporation, their duties are very simple. They determine the value and assess on that basis. If injustice is then inflicted or errors are committed, provisions are made for redress. But if those officers can determine the proportions of benefit without any prescribed methods of procedure or relief, the power vested in them would be absolute and extreme to the last degree. They would have more authority than any tribunal in the State or Union.

It was never the intent of the legislature to confer any such power. It has not been conferred in express terms and cannot be implied. If it has been exercised and acquiesced in, the safety of citizens requires that the question of power should be determined. A rule should be adopted which will alike protect the city and prevent confiscation. In case of omission to pay assessments the property can be sold and title vested in a stranger.

Where lands are needed for railway or city purposes the court appoints commissioners. The city is heard through its attorney and the landowners have full opportunity to employ counsel and be heard, and after full consideration the court is applied to, to confirm the report of the commissioners, and the various parties in interest have their day in court, including the right to appeal. But in the case of assessors, if the power claimed exists, all these safeguards are eliminated.

It is no answer to say that great labor would be imposed upon the city. When the rights of property are in question no duty should be omitted on account of the labor involved. Aside from this it is entirely clear that it would be quite as easy for the city to perform this duty as the assessors.

As matter of logical necessity, without regard to previous practices or acquiescence, it must be adjudged that the assessors had no power or authority to determine the relative benefits which will be conferred by the act or improvement. *Ellwood* v. *City of Rochester* (122 N. Y., 229, reported in Supreme Court, 43 Hun, 102), sustains the above reasoning.

Section 170 of chapter 14 of the Session Laws of 1880, containing the revised charter of the city of Rochester, is as follows:

" Whenever, by order of the common council, any new street or alley shall be laid out, opened or worked in said city, or any other public improvement is to be made, it shall be the duty of the common council to determine what portion, if any, of the expense thereof ought to be paid from the public treasury, and what portion, if any, ought to be paid by a local assessment, and to direct that the whole expense to be paid by a local assessment be assessed upon all the lots and parcels of lands to be benefited thereby in proportion to the benefit which each will derive therefrom. The common council may maintain, improve, embellish and protect any public park, square or area in said city, and grade, sewer and pave the streets and alleys, and make, grade and improve sidewalks about the same, or any part thereof. And they may cause the whole expense thereof to be assessed upon all the lots and parcels of land where the parks, squares or areas are situated, in proportion to the benefit which each lot or parcel will derive therefrom."

Section 172 provides: " Before the common council shall determ-

ine to make any such public improvement, they shall cause an estimate thereof to be made, and shall, by an entry in their minutes, describe the portion and part of the city which they deem proper to be assessed for the expense of such improvement."

It was there held, among other things, that the commissioners of assessment were bound by the portions designated by the common council, and had no power to make new subdivisions for assessment purposes. It will be observed that the clause in section 170 is similar to section 3 of the charter of the city of Buffalo, above quoted. And the language of the ordinance of the common council in this case was a direction to the commissioners of assessment to make it upon all the lands and parcels of land and houses therein determined by the ordinance to be benefited "in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire by the making of said improvement."

The commissioners divided the designated territory into two districts, one of which they decided would receive more benefit than the other. The court held that the assessors had no such power, which proves that section 3 of the charter of Buffalo fails in terms to *confer* power upon the assessors to determine the portions benefited. It is true that the charter of the city of Rochester differs from that of the city of Buffalo in expressly conferring power upon the council to make the determination. But in the absence of an express provision, whether the assessors or the city through its council shall determine, it is plain that the power is vested in the city.

The argument of the learned counsel for the appellant in the case at bar is, that the language of section 3 confers power. The case cited proves the reverse. Even if the language of the charter of the city of Buffalo was equally consistent with the exercise of that power by the council or the assessors, still it is obvious that it must be vested in one or the other, and no construction should be adopted which would relieve the city from making the determination, in the absence of a statute expressly conferring the power upon the assessors.

But, if the assessors had the power, they failed to exercise it either according to the sections of the charter above referred to, or the resolution of the common council. The eleventh and twelfth wards were excluded, not because they would not be benefited; it was obvious they would be, and the assessors so assumed. But they

were left out for the simple reason that they might be assessed for a future market. Neither the charter or resolution of the common council conferred any power except to assess the lands benefited in proportion to the benefit conferred. If, therefore, the power was properly delegated to the assessors, they failed to exercise it in the manner prescribed. The power as given excluded by necessary implication any authority to make it in any other manner. The *Ellwood Case*, above discussed, is decisive upon this proposition.

The interlocutory judgment must be affirmed.

DWIGHT, P. J., and MACOMBER, J., concurred.

Interlocutory judgment appealed from affirmed, with costs, with leave to the defendant to withdraw the demurrer on payment of costs, and to answer within twenty days after service of copy of order entered on this decision.