### RAUENSTEIN *v.* NEW YORK, L. & W. RY. Co.

*(Superior Court of Buffalo, General Term. July 8, 1892.)*

EMINENT DOMAIN—RAILROAD EMBANKMENT IN STREET—CHANGE OF GRADE.

    A city authorized a railroad company to construct its railroad through a certain street, and authorized and required it also to construct an embankment along a cross street, so as to carry public travel on the said street over the railroad. The city, it appeared, had no authority to authorize the construction of the railroad, and the formal proceedings prescribed by the charter, before a change of grade could be made on any street, were not taken as to the embankment. *Held*, that owing to the unauthorized construction of the railroad, and the failure of the steps essential to effect a change of grade, the attempted delegation of authority on the part of the city was not effectual to protect the railroad in the construction of the embankment from damages to abutting property shut out thereby from the street. *Ottenot v. Railroad Co.*, (N. Y. App.) 23 N. E. Rep. 169, distinguished.

Appeal from trial term.

Action by Louisa M. Rauenstein against the New York, Lackawanna & Western Railway Company for damages caused by the construction of an embankment so as to obstruct the way to plaintiff's property. From a judgment entered on a verdict directed for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

For opinion of court of appeals on former appeal, see 24 N. E. Rep. 1020.

Argued before TITUS, C. J., and WHITE and HATCH, JJ.

*George W. Cothran,* for appellant.  *John G. Milburn,* for appellee.

HATCH, J. The plaintiff is the owner of a three-story brick building situate upon the southeast side of Commercial street, in the city of Buffalo, which has been heretofore devoted to use as stores. The defendant has constructed, and now operates and maintains, a railroad in Water street, which forms a junction with and crosses Commercial street immediately south of plaintiff's premises. In order that defendant might cross Commercial slip, a part of the Erie Canal system, at the grade established by the state engineer, it became necessary to construct, and it constructed, an embankment about 6 feet high on the southeasterly side of the junction of Commercial street, extending westerly therefrom about 300 feet, upon a gradual descent, until it reaches grade. This embankment is 24 feet wide, with a lateral support of perpendicular stone walls, filled between, upon the surface of which are placed the rails of the track. In order that a crossing of this embankment might be effected, defendant constructed in Commercial street a raised roadway. Commencing at grade 102 feet north of the south end of plaintiff's premises, at a distance of 1 foot from the curb line of the street, it rises sharply to a height of 5 feet and 4 inches above the original grade of the street opposite the south end of plaintiff's building. This roadway is 20 feet wide, with perpendicular stone walls on each side, filled between and paved on the surface. By this structure plaintiff is placed in this position: Three of her stores and part of the fourth are virtually shut off from the street. There is left but one foot of street between the curb and the wall of the roadway; eight feet of sidewalk, with an outlet at the southerly end, consisting of stone steps; and an iron rail leading to the top of defendant's embankment in Water street. She may not make use of the sidewalk to drive upon to her stores without subjecting herself to a fine for violating the city ordinances, or to fine or imprisonment, or both, by the statute law of the state. Pen. Code, § 652. Her stores are practically useless, stand empty, and, unless she obtains relief in this action, it would seem that she is now without a remedy.

The case is hard, and her rights precarious. The claim has been heretofore made, and is now insisted upon, that this structure in Commercial street is no part of defendant's railroad or structure; that it was erected by virtue by the authority granted by the city, and as directed and approved of by it;

that as the structure is not used for any railroad purpose, and as plaintiff's property does not abut upon the railroad structure or street in which it is, she is in no legal sense damaged, and cannot recover for such act; that the determination of the court of appeals upon the former appeal is *res adjudicata* upon every question presented by the present record. 24 N. E. Rep. 1020. The authority to construct defendant's roadway in Water street, and also to erect the structure in Commercial street, which furnishes the foundation of the present action, is found in the proceedings of the common council, and is set out in the record herein. This authority is the same as was invoked to resist a recovery of damages in the case of *Reining* v. *This Defendant,* 128 N. Y. 157, 28 N. E. Rep. 640; and it was there decided that as to the structure in Water street the action of the council was not authority for its erection; that it was an illegal and exclusive appropriation of the street, rendering defendant liable to abutting owners who suffered damage on account thereof. While this decision does not necessarily determine that the present structure is an illegal structure, erected without authority, yet it has so far modified previously assumed facts and expressed views with respect to the legality of both structures, and the rights and liabilities flowing therefrom, that we are led to the conclusion that the decision of the former appeal has not foreclosed a re-examination of this question.

It is said, on the report of this case on appeal, that there is no difference in principle, and substantially none in the facts, between it and *Ottenot* v. *Railroad Co.,* (N. Y. App.) 23 N. E. Rep. 169. This, therefore, must be accepted as the rule; and while it is true that Ottenot had left to him a useful street, and the plaintiff had none, yet such difference does not change the principle to be applied. It is argued that the *Ottenot Case* is based upon the decision of *Conklin* v. *Railroad Co.,* 102 N. Y. 107, 6 N. E. Rep. 663, which is true; and it might be stated, with equal truth, that the learned judge who wrote therein reinforced his position by the case of *Uline* v. *Railroad Co.,* 101 N. Y. 98, 4 N. E. Rep. 536, and additional kindred authorities. We are therefore to see if there be any distinction between those cases and the law as recently announced. When the *Ottenot Case* was decided, it had not then been determined that defendant's structure in Water street was illegal, and that case proceeds upon the assumption that it was in all respects a legal structure, for the statement opening the argument is: "The railroad was built by lawful authority through Water street." In speaking of the *Conklin Case,* it says: "In that case the railroad was constructed across a country highway, under the general railroad act of 1850. * * * The railroad company was authorized to construct its road across the highway under an obligation to restore it to its former state, or to such state as not unnecessarily to have impaired its usefulness. Before entering upon the highway, it was required to have the written consent of the highway commissioners. * * * Here the railroad was constructed in Water street, crossing Commercial street, under the same provision of the general railroad act, after obtaining the assent of the city as required by that act, and also by the city charter. * * * So the railroads in that case and in this were constructed under the same public authority." Not only was it assumed that the defendant was authorized to construct the embankments, but it is asserted that "it was bound to raise the embankment in Water street, and it was bound by the law and the city ordinances to raise the embankment in Commercial street." This branch of the argument is concluded by the statement that "the defendant, having the authority of the statute and of city ordinances for what it has done, is not liable to the plaintiff, unless it has violated some right of his inviolably protected by the constitution."

Reference to the *Conklin Case* shows that the crossing of the railroad was not the subject of complaint, but solely the change of grade of the street made necessary by the railroad's existence. The latter was a legal structure, au-

thorized by law, both in its entirety and detail of construction. If the railroad in that case had erected an illegal structure, and such illegal structure had necessitated a change of grade of the street to effect a crossing, then we would have the present case; but there are noticeably two different features—*First*, the railroad was a legal entity; *second*, the abutting owner on the approach was left to enjoy "full opportunity for light and air and means of access." In the *Uline Case* it was expressly assumed that the railroad was a lawful structure, and the complaint therein did not challenge it. In all of the cases cited, and in all that have fallen under my observation, where the right of recovery for consequential damages was denied, the injuries were the result of legal acts, based upon undoubted authority. This case, therefore, is unlike, in this respect, any case which has preceded it. The effect of the decision in the *Reining Case*, as before seen, is to declare this structure, so far as Water street property owners are concerned, illegal and unauthorized. Such being its character, as to them it becomes a continuing nuisance. *Uline* v. *Railroad Co.*, 101 N. Y. 107, 4 N. E. Rep. 536; *Davis* v. *Mayor*, 14 N. Y. 524. It also becomes a continuing nuisance as to all persons owning property upon Commercial street, who are specially damaged by its existence, and such persons can maintain an action for damages, and compel an abatement of the nuisance. *Clarke* v. *Blackmar*, 47 N. Y. 153; *Crooke* v. *Anderson*, 23 Hun, 266; *Porth* v. *Railway Co.*, (Super. N. Y.) 11 N. Y. Supp. 633; *Flynn* v. *Taylor*, 127 N. Y. 596, 28 N. E. Rep. 418; *Callanan* v. *Gilman*, 107 N. Y. 360, 14 N. E. Rep. 264.

If no structure had been erected in Commercial street, and plaintiff suffered damage by the obstruction of the street, it would seem that she would have a legal remedy for the wrong done, against the defendant. How, then, is the situation changed when the damage is the result of a structure made necessary by defendant's illegal act? In fact, the two acts combined, as to plaintiff, render both streets useless; and, when we search for authority authorizing the construction of the embankment complained of, we find it depends upon the grant made authorizing the construction in Water street. If this were an action to recover damages for, and to compel the removal of, the obstruction of Commercial street by the Water street structure, it is not perceived how such action, upon the present facts, could be successfully resisted. It is, however, said that such is not this action; that it relates exclusively to the structure in front of plaintiff's premises in Commercial street; and as to that defendant was obligated in the grant given by the city to restore this street to a condition of usefulness, and that it bears no relation to defendant's railroad structure. The authority to construct the approach is found in the general grant, and, so far as material here, is thus expressed: "*Sixth*. That, in the construction of such road, such construction shall be so conducted as to interfere as little as possible with the public use of the streets crossed or occupied; and such company shall restore any street interfered with to as good condition as the same was before such interference, as soon as possible, and subject to the approval of the city engineer." The condition imposed is similar to the duty enjoined upon defendant by the general law of the state, for by that law it is required to restore a highway crossed "to its former state, or to such state as not unnecessarily to have impaired its usefulness." This provision in the grant, therefore, gave to defendant no other or different privilege, and imposed no additional obligations, in this respect, than if no mention had been made of the subject in the grant. If the city had no authority to authorize the structure erected in Water street, I am not able to see how it has authority to authorize the construction of an approach made necessary by such illegal structure. To support such contention would lead us to the conclusion that an act resting upon no basis of authority in law, and inflicting damage upon certain property owners, may nevertheless be made the basis of another act, which inflicts damage upon other property owners;

and as to the latter no remedy exists, for the reason that the latter act is a consequence of the first illegal act. I have found no such determination in the authorities. As before stated, whenever a recovery has been sought for consequential damages, it was either stated or assumed, in denial thereof, that the primary act of the company sought to charged had the sanction of law. As was stated by Judge DENIO in *Bellinger* v. *Railroad Co.*, 23 N. Y. 47: "If one chooses of his own authority to interfere with a water course, even upon his own land, he, as a general rule, does it at his peril, as respects other riparian owners, above or below. But the rule is different where one acts under authority of law. There he has the sanction of the state for what he does, and, unless he commits a fault in the manner of doing it, he is completely justified. This is, of course, to be understood as limited to cases in which the legislature has the constitutional power to act. If, therefore, a corporation or an officer should be authorized by a statute to take the property of individuals for any purpose, however public or generally beneficial, without compensation, or for a private use, making compensation, the pretended authority would be wholly void, and, of course, could afford no protection to any one. But this limitation has no application to cases where property is not taken, but only subject to damages consequential upon some act done by the state, or pursuant to its authority."

It would seem to follow from this that if the act was not done by the state, or by its authority, then it furnishes no protection when attacked. It is said in the *Conklin Case* that "a change made by the commissioners is deemed an incident to the existence of the road as a public highway, and is assumed to be dictated by the public necessity, and justified by the resultant public benefit." This statement shows that the structure here is dependent upon and appertains to the embankment in Water street. It is one of the things which is a consequence of the original structure,—was a necessity of it. The railroad is justified by necessity, and is a public benefit, when it is lawful; but when it is unlawful, and a nuisance, its existence cannot be justified, as it then ceases to be a necessity or a benefit, but becomes a wrong as to the public, if its wrong affects the public; as to the individual, if it only affects him or specially affects him. If what is necessarily incidental to the main structure, under these circumstances, inflicts damage, I see no reason why it does not become the proximate cause of injury, for which a recovery may be had. *Vandenburgh* v. *Truax*, 4 Denio, 465; *Pollett* v. *Long*, 56 N. Y. 200; *Lowery* v. *Railway Co.*, 99 N. Y. 158, 1 N. E. Rep. 608.

It is also said that this structure was a change of grade authorized by the city, who delegated its construction to defendant, and, as no claim is made that the work was improperly or unskillfully done, it is not liable. It is plain, if this claim be true, that no recovery can be had. That there was a change of grade in fact, and that such structure furnishes no part of the railroad, and is not used by it, is conceded. It is not denied but that a municipality may raise or lower the grade of a street without liability to an abutting owner, or that the railroad company may, with like exemption, perform the same acts when charged with its performance by lawful authority. What the limitations are upon the exercise of this power it is not necessary now to discuss. We are thus confronted with the question, was the change in the grade of this street ever authorized by competent authority? When the *Reining Case* was before this court there was division in the court upon this question, a majority holding that the acts of the council was not a change of the grade of the street. The court of appeals affirmed this view, using the following language: "The second proposition of the counsel of the defendant, that the building of the embankment was a mere change of grade of Water street, made under the authority of the city, is, we think, untenable. The charter of Buffalo gives plenary power to the city to fix and change the grade of streets by formal proceedings, and provides that, when a grade is established

or altered, a description of such grade shall be made and recorded by the city clerk. * * * The action of the common council granting permission to the defendant to occupy Water street, while it involved as a consequence the construction of an embankment in Water street, did not purport to be an exercise of the power to change the grade of the street under the charter. It does not appear that any description was made or recorded, as is required when a new grade is established." The same authority, and none other, which authorized the construction in Water street, authorized the construction now complained of. There was no other or different exercise of charter powers with respect to the change of the grade of the street in the one case than in the other. They are alike, with this exception: that the Commercial street approach was to be subject to the approval of the city engineer. Practically, in this respect, there was no difference; for the grant specifies other instances where the construction was to be subject to the approval of the engineer, and in fact, as the record shows, the whole plan of the construction in Water street was submitted to him. This difference, however, is not deemed controlling of the question involved. By section 2, tit. 9, (City Charter, Laws 1870,) the city is authorized to establish the grade of a street, and such grade, when established, shall be described, and such description, and all alterations thereof, shall be recorded in a book kept by the city clerk, and no street shall be worked until the grade is established and recorded. It appears from the case that the grade of Commercial street was first established and recorded many years ago; that in 1841, and again in 1843, it was altered, and as altered recorded; since which time no action has been taken in respect thereto, based upon any authority, except the action of defendant. By section 7 the city is authorized to grade and regrade streets. Section 8 provides: "When the expense of the work or improvement mentioned in the last section will exceed the sum of five hundred dollars, it shall not be ordered, except (1) upon the vote of three fourths of all the members elected to the common council, and, after notice of the intention to order, it shall have been published three times a week for two weeks in the official paper of the city; or (2) unless it shall be applied for by a majority of the owners, resident in the city, of the lands fronting on the street, * * * the lineal feet front of whose lands shall constitute at least two fifths of all the feet front of the lands on the street * * * along which such improvement is to be made." Upon the application by petition, it is to be referred to the assessors of the city for their certificate that the owners are a majority, and own the required number of feet, or it may not be ordered. By section 17 it is provided: "When the city shall alter the recorded grade of any street, * * * the owner of any house or lot fronting thereon may, within one year thereafter, claim damages by reason of such alteration. Upon presentation of such claim, the common council shall refer it to the assessors to hear such claim, and, if they shall allow any damages, to assess the same upon the real estate benefited by the alteration. The amount so assessed shall, when collected, be paid over to such claimant."

These are all the provisions of the charter authorizing the change of grade of a street, and all that permit an award for damage. It is conceded that the cost of this change of grade exceeded $500. Such fact did not appear in the former record. It is not claimed that any vote of the council was taken, authorizing a change of grade, or that any notice of intention to change the grade was ever published, or notice of any kind given, or that any action was taken, except the vote taken, authorizing the construction of the road, or that any petition was ever filed or made for a change of grade. We have, therefore, an entire absence of the exercise of any powers in conformity with the charter, or of any attempt to exercise them. The charter contemplates, when a change of grade is proposed, that the people to be affected thereby shall have notice, and shall also have the benefit of the judgment of three

fourths of the duly-elected members of the council — *First*, upon the question of the advisability of making the change; *second*, as to what portion of the street shall be affected, what the grade shall be, etc.    If an embankment is to be constructed, it is of the highest importance that it be so placed as to be of as little damage to abutting owners as possible, both for the benefit of the person injured, and for the benefit of the persons who must subsequently pay the damages to be assessed, if any accrue, and also that a nuisance may not be created.    To this end the statute vests this power in three fourths of all the members elected, and in no other person or body.    We are cited to no authority or statute where powers such as these can be delegated to another person, body, or branch of the city government.    In the distribution of such powers it was not contemplated that this burden and responsibility could be shifted to one person, as is here attempted.    The city was only authorized to act in this regard by the charter.    The city engineer was charged with no duty, and was authorized to exercise no powers in determining how the street should be carried over the embankment, or what position it should occupy in the street.    The fact that the plan of the structure was submitted to and approved of by him, and that he determined the place it occupied in the street best met the requirements of the street traffic, does not legalize the structure, or constitute it a change of grade.    The engineer of defendant, who drew the plan and submitted it to the engineer, had quite as much power, so far as the legalizing of this grade was concerned, as did the city engineer.    The action of the council, therefore, in delegating this power, and the approval by the city engineer, were without authority, and cannot be upheld.    *Savage* v. *City of Buffalo*, (Sup.) 14 N. Y. Supp. 101.    What was said in that case is quite appropriate here.    It thus appears that there was an utter failure to take the steps essential to change the grade of Commercial street, and in consequence the same rule finds force as was applied to Water street in the *Reining Case*.

Finally, it is said that defendant has a remedy against the city for damages, which she must pursue.    I have tried to show that, based upon the illegality of the structure in Water street, the approach falls under condemnation.    In the *Ottenot Case*, and upon the former appeal in this case, it was assumed that both structures were legal.    With this assumption overthrown, it is seen that the claim for damage cannot be enforced against the city, for the reason that there has been no authorized change of grade of the street in front of plaintiff's premises, which, as we have seen, is essential before a claim for assessment of damages is permissible.    What is now in this street, in front of plaintiff's premises, is an unauthorized obstruction, placed there by defendant, which occasions the damage complained of.    We have thus reached the conclusion that, upon the facts and the law as we now understand it, the direction of a verdict for defendant was wrong.    The case should have been submitted to the jury.    Judgment is therefore reversed, and a new trial ordered, with costs to abide the event.    All concur.