WILLIAM GARRATT, Appellant, *v.* THE TRUSTEES OF THE VILLAGE OF CANANDAIGUA, Respondent.

Under the provisions of the act of 1886 (Chap. 658, Laws of 1886) authorizing the trustees of the village of Canandaigua to construct a public sewer along the bed of the outlet of Canandaigua lake, the plan and details of the work were left to the judgment and discretion of the trustees, and although the plan adopted was faulty and a better one might have been devised they may not be made responsible for the results.

So, also, where it turns out that a person assessed for benefits was not in fact benefited as much as was anticipated, this does not give him a cause of action against the trustees.

Public officers or a municipality charged with the conduct of a work of public improvement, where they have acted in good faith and are not chargeable with any neglect, default or unlawful act, are not responsible to a property-owner because the work has not resulted in such benefits to him as were anticipated, or because it does not answer all the purposes for which it was projected.

As the commissioners appointed under said act had jurisdiction to make the assessments and a person assessed was given an opportunity for a hearing before them, and also to review the assessments, the conclusive presumption in an independent action is that the assessment was fair and based upon a proper adjustment of the benefits conferred and the burdens imposed; at least where it is not claimed that the improvement was not in some degree beneficial to the property of such person.

The trustees in prosecuting the work caused to be erected gates by which to regulate the flow of water from the lake. In an action, among other things, to compel said trustees to so use the gates as to diminish the flow of water through the same and to prevent its overflow on plaintiff's land, it did not appear that more water was allowed to pass through the outlet from the lake since, than before the improvement, or that the improvement or the use of the gates increased the flow of water on plain-

tiff's land, but simply that the improvement did not have the anticipated effect of completely draining overflowed lands. *Held,* that in the absence of any evidence that defendant had neglected any duty, either in the construction of the gates or the manner of operating them, or had done any unlawful act, the action was not maintainable; that the regulation of the quantity of water passing through the gates was committed, in a great measure, to the discretion of the trustees, and they were under no legal obligation to favor the plaintiff.

(Argued June 17, 1892; decided October 11, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 23, 1891, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain defendant from permitting the waters of Canandaigua lake to overflow plaintiff's land and for damages.

The facts, so far as material, are stated in the opinion.

*Henry M. Field* for appellant. The plaintiff was entitled to judgment in this action, that a perpetual injunction be granted. (Laws of 1886, chap. 658; *Corning* v. *T. I. Co.*, 40 N. Y. 7; *Mudge* v. *Salisbury,* 110 id. 413; *Galway* v. *M. E. R. Co.*, 128 id. 148.) The respondent now owning the property of the Ontario Hydraulic Company (Chap. 237 of the Laws of 1855) is under the same liability as said Hydraulic Company. (Dillon on Mun. Corp. § 985.) The grant given to the village by the legislature became a contract with the appellant to complete and carry out the same. (*Gilmore* v. *City of Utica,* 121 N. Y. 561, 568; *People* v. *Bd. Suprs.*, 51 id. 50; *People* v. *Bd. Suprs.*, 68 id. 114; *Conrad* v. *Trustees, etc.*, 16 id. 158.) The respondent having initiated the proceedings under the act of the legislature and having taken possession of the feeder, built the bulkheads, etc., should be held to have accepted the authority given to it by the legislature, subject to all the burdens and liabilities. (*Bailey* v. *Mayor, etc.*, 3 Hill. 531.) The appellant is entitled to maintain this action, and

to the relief asked for in the prayer of the complaint, whether the plan of sewerage was defective or not. (*Baily* v. *Mayor, etc.*, 3 Hill. 531; *Mayor, etc., Furze,* Id. 612; *Hutson* v. *Mayor, etc.*, 5 Seld. 163; *Mills* v. *City of Brooklyn,* 32 N. Y. 489; *Butler* v. *Vil. of Edgewater,* 25 N. Y. S. R. 315; *Stoddard* v. *Vil. of Saratoga Springs,* 22 id. 215; *Noonan* v. *City of Albany,* 79 N. Y. 470; Wood on Nuisances, § 752; Dillon on Mun. Corp. § 1051; *Hardy* v. *City of Brooklyn,* 90 N. Y. 435; *Morgan* v. *City of Binghamton,* 32 Hun, 602; *Bates* v. *Inhabitants of Westborough,* 151 Mass. 174.) The village now owns the feeder the bulkheads and the gate, and has the absolute right to control them and should be required to regulate the gate and the waters flowing through it so as not to destroy appellant's land. (*Vogel* v. *Mayor, etc.*, 92 N. Y. 19.) The acts of defendant amount to a nuisance, and in such case the court will grant an injunction to restrain it in continuing the same. (*Cogswell* v. *N. Y. C. & H. R. R. R. Co.*, 103 N. Y. 21; *Baily* v. *Mayor, etc.*, 3 Hill. 531; *Byrnes* v. *City of Cohoes,* 67 N. Y. 204; *Noonan* v. *City of Albany,* 79 id. 470; *Seifert* v. *City of Brooklyn,* 101 id. 136; *In re B. & P. R. R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317; *Spokes* v. *Branbury Board of Health,* L. R. [1 Equity] 41; *Hooker* v. *City of Rochester,* 37 Hun, 181; *Tiffany* v. *U. S. I. Co.*, 67 How. [U. S.] 73; *Gould* v. *City of Rochester,* 105 N. Y. 46; *Chapman* v. *City of Rochester,* 23 Wkly. Dig. 424; *Vick* v. *City of Rochester,* 46 Hun, 607; *Lynch* v. *Mayor, etc.*, 76 N. Y. 60; *Mayor* v. *Furze,* 3 Hill. 612; *Hutson* v. *Mayor,* 5 Seld. 163; *Mills* v. *City of Brooklyn,* 32 N. Y. 489.) The appellant has helped to pay for the property, which is useful and valuable to the defendant, it has exclusive control over the gate, and the court should use all its equitable powers to sustain plaintiff's rights, and protect his property. (*Fletcher* v. *Rylands,* L. R. [1 Exch.] 2; *G. L. & C. Co.* v. *Vestry, etc.*, L. R. [15 Q. B.] 1.) The court erred in sustaining the objection of defendant as to question asked the witness Ellis. (*Adams* v. *Conover,* 87 N. Y. 422.)

*Edwin Hicks* for respondent. The plaintiff cannot recover under the provisions of chapter 658 of the Laws of 1886. (*Johnson* v. *Spear*, 107 N. Y. 185; *In re N. Y. E. R. R. Co.*, 70 id. 350; *People* v. *Hills*, 35 id. 499; *People* v. *Allen*, 42 id. 378; *Huler* v. *People*, 49 id. 132; *People* v. *Suprs.*, 43 id. 10; *People* v. *Purdy*, 54 id. 276.) The corporation is not estopped from raising this objection by the action of its board of trustees. (*Mayor, etc.*, v. *Cunliff*, 2 N. Y. 165.) The plaintiff is not entitled to an injunction in this action upon the merits. (*Major* v. *Merserole*, 26 Wend. 131; *Moore* v. *Saundly*, 6 Johns. Ch. 28; *Thompson* v. *Mather*, 2 Edw. Ch. 212; *T. & B. R. R. Co.* v. *B. H. T. & W. Co.*, 86 N. Y. 122; *Stevens* v. *Major*, 84 id. 296; *Mann* v. *Fairchilds*, 2 Keyes, 111; *Arnold* v. *Angell*, 62 N. Y. 508; *Gentil* v. *Armand*, 38 How. Pr. 94; *Morgan* v. *City of Binghamton*, 102 N. Y. 500; *Woodruff* v. *Fisher*, 17 Barb. 224.) This plaintiff, being a party to the proceedings, having appeared before the commissioners, and having taken the award for damages, and not having appealed from their decision in regard to the benefits, is estopped thereby, as well as by the action and decision of the commissioners in making their award, and cannot maintain this action, which is at most only an incidental injury, if it is an injury at all. (*In re P. P. & C. I. R. R. Co.*, 85 N. Y. 489, 499; *R. & S. R. R. Co.* v. *Budling*, 6 How. Pr. 467, 469; *Pray* v. *Hegeman*, 98 N. Y. 351; *In re Commissioners of Central Park*, 50 id. 493; *DePeyster* v. *Mali*, 92 id. 262.) Whatever control the defendant may have it is subjected to special limitations independent of the general rule controlling the flow of water. (Laws of 1855, chap. 234, § 1; Laws of 1886, chap. 658, § 1.) The action on the part of the defendant which is complained of is in the prosecution of a public work authorized by the law of 1886, and so considered the plaintiff's case must fail. (*Webb* v. *Atherson*, 4 Barb. 51; *Richardson* v. *Crandall*, 48 N. Y. 361; *Winter* v. *Kinney*, 1 id. 365.) No action will lie against the defendant for consequential or other injury resulting from the work, or for inadequacy of the plan adopted to carry out

successfully the entire object. ( *Waggoner* v. *German,* 3 Hill,
375; *Atwater* v. *Trustees, etc.,* 30 N. Y. S. R. 587; *Ely* v.
*City of Rochester,* 26 Barb. 133; *Urquhart* v. *City of Ogdens-
burgh,* 91 N. Y. 67; *Kavanah* v. *City of Brooklyn,* 38 Barb.
232; *Bellinger* v. *N. Y. C. R. R. Co.,* 23 N. Y. 42; *Hines*
v. *City of Lockport,* 50 id. 236; *Mills* v. *City of Brooklyn,*
32 id. 489; *Mills* v. *Mayor, etc.,* 1 Den. 595; *E. R. C. Co.*
v. *Donnelly,* 25 Hun, 614; *Cain* v. *City of Syracuse,* 29 id.
105; 95 N. Y. 83; *Town of Ontario* v. *Hill,* 29 Hun, 250–
253; *City of Detroit* v. *Beekman,* 22 Am. Rep. 507; *Lan-
sing* v. *Toolan,* Id. 501; *Carr* v. *Northern Liberties,* 35 Penn.
St. 324–329; *Watson* v. *City of Kingston,* 114 N. Y. 88;
*Rutherford* v. *Village of Holly,* 105 id. 632; *Heiser* v.
*Mayor, etc.,* 104 id. 68; *In re Squire,* 34 N. Y. S. R. 721.)
The rulings made on the questions put to the witnesses F. L.
Manning and Bolivar Ellis were proper. (*Brooks* v. *Mayor,
etc.,* 57 Hun, 104; *Green* v. *Clark,* 5 Den. 49; *Morgan* v.
*Plumb,* 9 Wend. 288; *Thomas* v. *Hubble,* 18 Barb. 9–10.)
In an equity action the court will not reverse the judgment
on account of the admission of improper evidence, if from the
whole case it appears that such evidence could not have
changed the result. (*King* v. *Whaling,* 59 Barb. 71; *In re
N. Y. C. R. R. Co.,* 90 N. Y. 342.)

O'BRIEN, J. By chapter 658 of the Laws of 1886, the trus-
tees of the village of Canandaigua were authorized to raise
money and to take and appropriate lands for the purpose of
constructing a system of drainage and sewerage for the village
and also for the purpose of reclaiming wet and swamp lands in
two of the adjoining towns. The act provided for the
appointment of commissioners by the County Court to deter-
mine and award the damages sustained by any property owner
whose lands were taken or injuriously affected by the improve-
ment, and also to assess such portion of the expense of making
the improvement upon the property benefited by the drainage
in proportion to such benefits as would be just. The award of
damages and the assessment for benefits were both subject to

revision by the commissioners upon a rehearing and to a further examination upon appeal to the County Court. The plaintiff was awarded damages in the sum of $156.36 and assessed, on account of benefits supposed to follow from the improvement, $800. It does not appear that he raised any question with respect to the amount of the assessment before the commissioners or appealed to the County Court. The plaintiff's general complaint is that while he was assessed and has paid a large sum as his contribution to the expense of the work contemplated by the statute, his lands have not been drained or reclaimed to the extent anticipated. The plaintiff's grievance really grows out of what to him appears to be an improper exercise of the sovereign power of taxation delegated by the legislature to the officers and bodies designated in the statute. The main object of the enactment was to enable the authorities of the village to improve the sewerage system, one of the ordinary public objects for which municipal burdens are imposed. It appears that something over $26,000 was expended for the purpose and of this nearly $23,000 was assessed upon the village at large. The plan that was finally adopted and carried out by the trustees was to dispose of the sewage through the outlet of the lake and what is called the feeder to this outlet, and this required the removal of certain obstructions in the stream, which constituted the outlet, in order to produce a more rapid flow of the water. One of these obstructions was a dam across the outlet, some four miles from the foot of the lake, which had been maintained for many years for manufacturing purposes. The power of eminent domain also delegated by the statute, was used to remove this dam, involving as it did, the obligation to make compensation, in comparatively a large sum, to the owner which was paid. The balance of the work in cleaning out the stream consisted mostly in the removal of bars and other obstacles to a free flow of the water, and in dredging and deepening the channel in some places. The statute contemplated that the removal of these obstructions would inure to

the benefit of the owners of land along the outlet and near the foot of the lake, which had been before subject to overflow, and hence power was conferred upon the commissioners to charge some part of the expense upon these lands upon the basis of the benefits conferred. What the plaintiff complains of is that this power has been so exercised as to impose upon him a considerable burden without conferring all the benefits contemplated when it was imposed and paid. The learned trial judge who was evidently somewhat impressed with the merits of the plaintiff's claim, has not found that the removal of the obstructions in the outlet is not in some degree beneficial to the plaintiff's farm, but he has found that the removal of the obstructions and cleaning out of the feeder and outlet and taking down of the dam, have not drawn off the water from the plaintiff's land *to the extent that they expected* and that they are still overflowed and unfit for cultivation to a very great extent. He also finds that since the completion of the improvement the rainfall in the locality has been unusually heavy and that it does not appear precisely to what extent the land of the plaintiff would be free from water in ordinary times and under ordinary circumstances, but that it was expected when the plan for cleaning the outlet was adopted, it would, when carried out, sufficiently drain plaintiff's lands to enable him to till them. It must be admitted that the trustees and the commissioners had under the statute power and jurisdiction to make the improvement and to impose the assessment. How the improvement in the drainage of the village was to be secured and how the wet lands along the outlet were to be reclaimed was left by the legislature, in a great measure, to the discretion and judgment of the village authorities. The statute does not prescribe the plan or details of the work by means of which the end was to be accomplished. That was left to the judgment of the trustees and, even though the plan that was adopted was faulty and a much better plan might have been devised, still as they acted in good faith, they could not be made responsible for the results or consequences of an erroneous judgment in that

regard. (*Hines* v. *City of Lockport,* 50 N. Y. 236; *Urqu-
hart* v. *City of Ogdensburg,* 91 id. 67.)

The power to drain the lands near the village might have
been conferred by the legislature for public purposes, to pro-
mote health or the like, and whether that was the motive that
prompted the enactment of the statute, or some private inter-
est is not now important. Jurisdiction was conferred upon
the commissioners, with respect to assessments upon the lands
along the outlet, for benefits to result from the drainage, sub-
ject to appeal by any party aggrieved to the County Court.
If it be said that the plaintiff ought not to have been assessed
at all or that he has been assessed for too large a sum, the
answer is that upon this question he has had his day in court.
He could have appeared before the commissioners and by evi-
dence or argument satisfied them that the proposed plan
would not, when carried out, result in reclaiming any of his
wet lands, or certainly not to such an extent as to warrant
the imposition upon him of so large a burden. He was
entitled to a hearing and to show if he could that the improve-
ment proposed would not result in any benefit to him, and to
insist that until some plan was formulated upon the basis of
which the work was to be done, that would result in draining
his lands no assessment should be imposed upon him. He
had as good an opportunity of forming an opinion as to the
effect on his wet lands, of the improvement proposed as the
trustees. He had the right to object to any assessment until
the commissioners were convinced that what was proposed,
with respect to clearing out the feeder and outlet, would
result in improving his lands to the extent of the assessment
proposed. In case the commissioners proceeded upon erro-
neous principles, or upon a basis that furnished no reasonable
ground for the belief that any benefit to the plaintiff's prop-
erty would follow from the work proposed, or for any other
valid reason, based upon the facts or the law, the plaintiff was
entitled to a further hearing in the county court. As the
plaintiff neither objected nor appealed but allowed the award
and assessment to be confirmed, we must assume that he, like

the trustees who had been intrusted with the duty of formulating and executing a proper plan for the improvement, anticipated results from what was proposed which have not been fully realized. That consideration, however, would not justify this court in assuming that the assessment was either erroneous or excessive as a ground for some liability against the defendant in this action. All that we can know now, in regard to the assessment, is that there was jurisdiction to make it an ample opportunity to review it if erroneous, and that there is no finding or request to find that the improvement was not, in some degree at least, beneficial to the plaintiff's property. Under such circumstances it must be presumed, in an independent action like this, that the assessment was fair and based upon a proper adjustment of the benefits conferred and the burden imposed. The part of the plaintiff's case, that perhaps is urged with most earnestness, is the fact found that the trustees caused to be erected at the head of what is called a feeder, or large artificial channel through which the water flows from the lake into the outlet, and near the place where gates had formerly existed, to control the flow of water, a bridge and gates by means of which they are enabled to control the flow of water from the lake as they may desire. The rights and privileges conferred by the statute were to be exercised in such a way that the waters of the lake should be maintained at a height not less than the ordinary height of such waters at low-water mark. To this end the trustees were by the last section of the act authorized to erect and maintain in the outlet of the lake, and in this new channel for said outlet, locks or bulkheads with gates and by such and other adequate means, to so control and regulate the discharge of the waters as to fully comply with the provisions of the act. The plaintiff complains that the trustees do not keep this gate closed, but on the contrary wide open and permit water to flow through it into the outlet to such an extent as to overflow his lands. There is no question with respect to the power of the trustees to erect and maintain the gate and control the flow of the water. The plaintiff's claim seems to

be that this power should be exercised in such a way as to lessen the flow of water in the outlet and thus relieve his lands.   The bed of the outlet is the sewer through which the sewage from the village was to be carried away, and when improved in the manner contemplated by the statute, was to be and remain the property of the city. The defendants are, therefore, using the gate to regulate the flow of the water from the lake into the sewer, and how much or how little they shall allow to pass through the gate is a matter that, from the nature of the case, must, to a great extent at least, rest in their discretion.   It is not alleged or found, and there is no request to find, that the defendants have omitted any duty that they owe to the plaintiff, with respect to the construction of the gates, or the manner of their operation.   It is not found, and there is no request to find, that in any of these particulars the defendants or their predecessors have been guilty of any negligent or unlawful act.   Nor is there any finding or request that more water is allowed to pass through the outlet from the lake since than before the improvement, or any other act done on the part of the defendants in making the improvement or in using the gates which increases the overflow of water on the plaintiff's lands.   It may very well be that the defendants in using the gates could favor the plaintiff by shutting off the flow of water through the outlet, but we are unable to find anything in the case to warrant us in holding that they are under any legal duty or obligation to do so.   The statute does not seem to have contemplated that the improvement provided for was to lessen the flow of water into the outlet from the lake, but to furnish facilities by removing the dam and other obstructions, for a more free and rapid flow of the water.   The dam and other obstructions in the outlet were supposed to cause the overflow and when removed it was expected the lands would be reclaimed.   That these expectations have not been fully realized, is perhaps, to be attributed more to the fact that sufficient money or labor was not expended in the work of removing the obstructions and deepening and adding to the capacity of the outlet, rather

than to any mismanagement or defect in the plan. What has been done seems to have been well enough directed, but the operations did not go far enough for the purpose of completely draining and reclaiming the overflowed lands. It is the case of an improvement undertaken and carried on partially at the expense of local property owners which, in the end, did not confer upon them all the benefits that had been anticipated, but which result, so far as appears, is not chargeable to any wrong or negligence on the part of defendants. Public officers or a municipality charged with the conduct of such a work are not responsible to a property owner because the work has not resulted in such benefits and advantages to him as were anticipated, or because it does not answer all the purposes for which it was originally projected, when the authorities have acted in good faith and are not chargeable with any neglect, default or unlawful act on their part. To enjoin the defendants from regulating the flow of the water through the gates in their own way and according to their best judgment, and to require them to exclude, by the use of the gate, all water from the lake that may overflow the plaintiff's lands, would be to deprive them of all discretion when, so far as appears, their action in regard to it is not unlawful, malicious or negligent. The action was not, therefore, sustained, and the complaint was properly dismissed. We have examined the rulings and other questions in the case to which our attention has been called, and we find no error that would justify a new trial.

The judgment should, therefore, be affirmed with costs.

All concur.

Judgment affirmed.