(15 App. Div. 139.)

J. & A. McKECHNIE BREWING CO. v. TRUSTEES OF VILLAGE OF CANANDAIGUA et al.

(Supreme Court, Appellate Division, Third Department. March 12, 1897.)

1. MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—ASSESSMENT.
   Property adjoining a sewer is not exempted from assessment for the cost of its construction by the fact that the property is not benefited thereby, under Laws 1876, c. 407, § 3, as amended by Laws 1887, c. 266, providing for the assessment of such cost against property adjoining the sewer and such other property as is benefited.

2. SAME—LEGISLATIVE POWER.
   The legislature may, in the exercise of the taxing power, prescribe that the cost of local improvements shall be assessed on all property in the locality, irrespective of special benefits.

3. SAME—CONTRACT BY VILLAGE TRUSTEES—VALIDITY.
   Village trustees are not authorized to agree with the property owners that certain property adjoining a sewer to be constructed shall not be assessed therefor, in consideration of the conveyance of a right of way for

the sewer through such property, under Laws 1876, c. 407, § 3, as amended by Laws 1887, c. 266, empowering the trustees to purchase a right of way, but providing for commissioners to assess cost and benefits.

4. SAME—EFFECT ON COMMISSIONERS.

The commissioners appointed to assess benefits after the construction of the sewer are bound by such contract, since, though it was unauthorized, the right of way was taken under it.

5. SAME—VALIDITY OF ASSESSMENT.

In such case, the assessment is rendered void by the fact that the commissioners omitted from the assessment property liable thereto, though they were precluded from assessing it by the illegal contract of the trustees.

6. SAME—EQUITABLE REMEDY.

A property owner is not confined to the remedy prescribed by Laws 1876, c. 407, § 3, as amended by Laws 1887, c. 266 (providing that any person aggrieved by an assessment for sewer construction may appeal to the county court, which may vacate or alter the assessment), but may sue to vacate the assessment as a cloud on his title, where the commissioners making the assessment lost jurisdiction by omitting from the assessment property liable thereto, and the facts invalidating the assessment do not appear on the record thereof.

Herrick and Merwin, JJ., dissenting.

Appeal from judgment on report of referee.

Action by the J. & A. McKechnie Brewing Company against the trustees of the village of Canandaigua and John Hannah. From a judgment dismissing the complaint, plaintiff appeals. The appeal was heard at the appellate division, Fourth department; and, the judges qualified to hear it being equally divided, it was ordered (40 N. Y. Supp. 1144) to be heard in the appellate division, Third department, pursuant to Code Civ. Proc. § 231. Reversed.

This action was brought to vacate an assessment and tax upon the real estate of the plaintiff, made and levied for alleged benefits thereto because of the construction by the trustees of the village of Canandaigua of what is known as the "West Side Sewer," and to restrain the defendants from enforcing the lien of such assessment, on the ground that the same was invalid, but a cloud on the plaintiff's title. Under the provisions of chapter 407 of the Laws of 1876, as amended by chapter 266 of the Laws of 1887, the trustees of the village of Canandaigua were authorized to construct and maintain sewers. The act prescribed the procedure to be adopted by the trustees in building sewers, the manner of acquiring title to a right of way across lands through which a sewer should be laid, and the manner of appraising damages and benefits. It enacted that, if the said trustees were unable to obtain a conveyance of the lands, rights of way, or easements required, three commissioners should be appointed to appraise the damages, as well as the benefits, to landowners resulting from the sewer, and that, after the construction thereof, the said trustees should make and file in the clerk's office of the village a detailed statement of the damages, costs, and expenses incurred on account thereof. Subdivision 6 of section 3 provides as follows: "Upon the filing of such statement, the commissioners aforesaid shall proceed to assess the amount of said damages, expenses and costs of construction, upon the owners of property adjoining and along the line of said sewer or drain, and upon the owners of such other real property as the said commissioners shall deem to be benefited by said sewer or drain, or may at any time enjoy the use of the same, and in proportion to said benefit, as the same shall be determined by said commissioners or a majority of them, and they shall make a report of their assessment, in writing and file the same in the clerk's office of said village. The report shall contain their appraisements and assessments for benefits, describing with common certainty the piece or parcel of land deemed to be benefited, and shall state the amount of the appraisement upon each owner, so far as such owner can be ascertained." Subdivision 11 of section 3 provides that, in case the trustees are able to acquire by agreement all the real estate, rights, and easements required for the sewer, commissioners

shall be appointed for the purpose of assessing benefits. Before the said West Side sewer was constructed, the trustees of the village of Canandaigua acquired, from 10 parties who severally owned parcels of land through which the sewer was to be constructed, a right of way across said lots, each deed from said parties containing substantially the following covenant, agreement, or condition: "This conveyance is made upon the following conditions: That whereas, there has recently been constructed a public sewer in Main street, opposite the above-described premises: Now, therefore, if said party of the first part shall be assessed for and pay for benefits derived from the construction of said Main street sewer, then no assessment of benefits shall be made for the construction of the sewer first above mentioned. The party of the second part, in constructing or repairing said public sewer, shall leave the surface of any land entered upon for such purpose, and any subsoil drains therein, in the same condition, as nearly as may be, as they were before such entry. As a further condition of this conveyance, the said party of the first part, her heirs and assigns, shall at all times have the right to connect her private drains or sewers with said public sewer, in such manner, and for such purposes, and under such regulations in regard to the use of said public sewer, as may be adopted by said trustees." After the sewer was built and the statement of the cost thereof filed, the commissioners, in pursuance of the act, proceeded to assess the benefits. The referee found, referring to the 10 pieces of real estate above mentioned through which a right of way was conveyed by the several owners to the said trustees, "that there were wholly omitted from the said assessment for benefits ten pieces or parcels of real estate over and upon which the said West Side sewer was constructed, so that the same were in fact adjoining or along the line of said sewer. * * *" The appellant claims that the omission of the 10 lots in question from the assessment for benefits was a plain violation of the provisions of chapter 407, Laws 1876, as amended by chapter 266, Laws 1887, the effect of which was to increase the amount of its assessment for benefits; and as, when officers acting under a statutory authority materially depart from the authority delegated, they act without jurisdiction, that the whole assessment was invalid. The amount of the tax assessed upon the plaintiff's real estate was $5,944.66. The issues in the action were referred; and from a judgment entered on the referee's report, dismissing the complaint, the plaintiff has appealed to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Henry M. Field (Frank Rice, of counsel), for appellant.
John Colmey (James C. Smith, of counsel), for respondents.

PUTNAM, J.    It is said in the opinion of the learned referee, and claimed by the counsel for the respondents, that while the strict letter of the statute quoted in the statement of the case, under which the commissioners acted, required an assessment for benefits of the 10 lots of land adjoining and along the line of the sewer omitted from the assessment, it should be deemed that the intent of the legislature was that only parties determined by the commissioners to be benefited should bear the expense of construction of the sewer.    The authorities cited by the learned counsel for the defendants fully sustain his position that, when the language of a statute calls for a construction, the intent is to be sought for and to control; that the letter of the statute does not always govern; that a reasonable construction should be adopted.    Those authorities, however, only appear in cases where the language of the statute requires construction.    When the meaning is clear, when there is no ambiguity, another principle, stated by Gray, J., in People v. Wemple, 115 N. Y. 302–308, 22 N. E. 272, applies, viz.:

"The intent of the legislature is to be sought, primarily, in the words used; and, if they are free from ambiguity, there is no occasion to search elsewhere for their meaning. As it was said in McClusky v. Cromwell, 11 N. Y. 593: 'It is not allowable to interpret what has no need of interpretation, and, when the words have a precise and definite meaning, to go elsewhere in search of conjecture, in order to restrict or extend the meaning.' The natural and obvious meaning should be taken without resorting to subtle and forced construction."

The language of the act under consideration is not ambiguous. The commissioners are plainly directed to assess the sum to be raised upon the owners of the property adjoining and along the line of said sewer, and on the owners of such other real property as they shall deem benefited.

The claim of the respondents is that the act should be construed as if it provided that the sum to be raised should be assessed only against the property benefited by the sewer, and as if the words "upon the owners of property adjoining, and along the line of said sewer or drain," were omitted. I can find no authority for giving such a meaning to a statute that requires no construction,—for holding that no force or meaning should be given to the words above quoted. Under section 3 of the act, before its amendment, it was provided that the cost of a sewer, the construction of which was authorized by the act, should "be borne and defrayed wholly by the owners of all lands that shall be benefited thereby." On the amendment of the section, the language above quoted was substituted. If the legislature intended that the expense of the sewer should only be borne by those benefited, and to leave the question as to who were benefited entirely to the decision of the commissioners, it was easy to do so by using the same language as in section 3 before the amendment. I think the language of subdivision 6 of section 3, supra, clearly evinces a legislative determination that lands along the line of a sewer, the construction of which is authorized by the act, are to be held benefited by it. The commissioners appointed under the act have no right to determine otherwise. They can only decide what other lands are benefited, and the relative amount to be raised from the same, and from the lands along the line of the sewer. They are compelled to assume that every piece of land adjoining or along the line of the sewer (the territory designated by the legislature as benefited) derives some benefit, and to assess the same in proportion to such benefit. They cannot modify the determination of the legislature. It is well settled that the legislature, in providing for a public improvement, may designate the district benefited within the municipality where it is to be made, and charge the expense of it upon the property in such district; that this is an exercise of the taxing power, which is unlimited, not only to the extent of the taxation to be imposed, but as to the manner, whether generally upon all the property of a locality, or upon such only as is supposed to be benefited. In re Van Antwerp, 56 N. Y. 261; McLaughlin v. Miller, 124 N. Y. 510, 26 N. E. 1104; Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682.

Assuming, however, that the contention of the respondents as to the construction which should be given to the act in question is

correct, and that the legislature intended that only that portion of the property actually benefited should be assessed, it is apparent that the 10 lots in question were omitted by the commissioners from the appraisal for benefits, and were not considered or appraised.   I understand that the referee so found in his seventh finding.   He says:

"That there were wholly omitted from the said assessment, for benefits, ten pieces or parcels of real estate over and upon which the said West Side sewer was constructed, so that the same were in fact adjoining or along the line of said sewer, owned in severalty as follows: [Stating the names of the several owners.]"

And apparently, as a reason for such omission, the referee proceeds to state the fact that the several owners of such lots conveyed the same to the trustees of the village, with the agreement contained in such deeds that the several grantors should not be assessed for benefits.   The word "assessment" is defined to mean "the act of assessing, determining, or adjusting the amount of taxation, charge, damages, etc., to be paid by an individual, a company, or a community."   Cent. Dict.   The referee's finding that the 10 lots were wholly omitted from the assessment for benefits is equivalent to saying that such property was not considered by the commissioners,—was not appraised.   The commissioners, under the construction given the statute by the respondents, were called upon to determine whether the 10 lots were subject to assessment, and the amount for which they should be charged,—to appraise them; but they omitted them from such appraisement and assessment.

If there can be any doubt as to the meaning of the referee in his seventh finding, it will not be improper to examine his opinion with a view of ascertaining what he intended to determine in the finding in question.   He says:

"The trustees of the village, for the purpose of obtaining the right to construct the sewer across the rear ends of these lots, extending from Main street back to the railroad, took conveyances from the owners of lands between the brewery and Gibson street which were assessable for the construction of the Main street sewer, conditioned that they should not be assessed for the cost of construction of the West Side sewer, and. in consequence of such conveyances, the commissioners omitted to appraise and assess these lands for the construction of such sewer."

It is impossible to read the evidence and admissions contained in the case without reaching the conclusion that the statement of fact thus quoted from the opinion of the referee is correct; that the commissioners did not appraise the 10 lots, or consider them in their appraisement for benefits, because of the agreement of the trustees with the owners thereof.   It is difficult to see how, under the circumstances, the commissioners could have appraised the said property for benefits.   Undoubtedly, the action of the trustees of the village of Canandaigua in entering into an agreement with the vendors of the 10 lots in question that, in consideration of such conveyance, they should not be assessed for benefits, was illegal and unauthorized.   The statute gave the trustees authority to purchase a right of way, and probably to settle the amount of damages therefor, but provided for the appointment of commissioners

44 N.Y.S.—21

to assess benefits. Under the act no power whatever is given to the trustees to settle the amount of benefits, and no power will be implied. But, although such action of the said trustees was beyond their authority, I think it prevented the commissioners from appraising and assessing the property in question for benefits. When the latter were called upon to make such appraisement, the village owned a sewer and the easement or right of way through the land where it was constructed. The right of way through a portion of such land had been obtained by voluntary conveyances from several grantors, and in each deed, as a consideration therefor, had been inserted a covenant that said grantor should not be assessed for benefits. The trustees of the village, while retaining the possession of the right of way thus conveyed, could not repudiate the covenant contained in the conveyances, which was in fact the consideration thereof. It was estopped from claiming before the commissioners that such grantor could be assessed for benefits.

The commissioners were necessarily bound by the action of the trustees. Benefits could not be assessed until the trustees had acquired a right of way, and built the sewer, and until the damages had been determined. When the commissioners were called upon to act, the 10 parties in question had conveyed a right of way, and released their damages, in consideration of the covenant contained in their several deeds that they should not be assessed for benefits. If the commissioners could hold this agreement void, the release of damages was also invalid. The action of the commissioners was necessarily based upon the previous action of the trustees, and that the release of damages was valid; and, this being the case, they were compelled to hold that the agreement as to benefits—the consideration of such releases—was also valid. They could not hold the said several conveyances valid for the purpose of conveying a right of way for the sewer and release of damages therefor, and invalid as to the covenants therein in regard to benefits, which was the consideration thereof. I think, therefore, that whether the provisions of subdivision 6 of section 3, supra, be construed as counsel for the respondents claims it should be, or otherwise, the commissioners were prevented by the illegal action of the trustees of the village of Canandaigua from appraising a portion of the land through which the West Side sewer was laid, for benefits; that they did not attempt to obey the provisions of the statute in that regard, but wholly omitted the 10 lots in question from such appraisement; and that hence the assessment was invalid.

The commissioners having intentionally omitted from the assessment a portion of the property designated by the legislature as benefited, and the necessary result of such omission being to increase the amount of the plaintiff's assessment, under the well-settled doctrine that where a board of officers, in making a local assessment, materially depart from the authority delegated them, they act without jurisdiction, this action was properly brought. Savage v. City of Buffalo, 59 Hun, 606, 14 N. Y. Supp. 101; Id., 131 N. Y. 568, 30 N. E. 226; Hassan v. City of Rochester, 65 N. Y. 516, 67 N. Y. 529; Elwood v. City of Rochester, 43 Hun, 102; Id., 122 N. Y. 229, 25 N.

E. 238.   Under the authorities cited, the assessment in question was absolutely void as against the plaintiff.

Judge Earl, in Van Deventer v. Long Island City, 139 N. Y. 133–139, 34 N. E. 774, referring to the cases of Hassan v. City of Rochester and Elwood v. City of Rochester, supra, and another case, says:

"These cases hold that where the law requires the expense of a local improvement to be assessed upon the property within prescribed limits to be benefited thereby, in proportion to the benefits, the assessment is void if any of the property be omitted from the assessment."

It is urged by the learned counsel for the respondents that the act under consideration has provided a remedy for erroneous acts on the part of the commissioners, by a review of an assessment before them, and an appeal to the county court; that this remedy is exclusive; and hence that this action cannot be maintained.   I have examined the cases cited by him, one of which is Garratt v. Trustees, 135 N. Y. 436, 32 N. E. 142.   In that case, however, it appeared that the authorities of the village, in constructing the sewer, acted within their jurisdiction; that they had not violated the provisions of the statute authorizing the construction of a sewer, but, in the exercise of their judgment and discretion, had adopted a faulty plan.   It was held in the case cited that, under such circumstances, a court of equity would not interfere, as the plaintiffs could obtain relief by a rehearing before the commissioners, and the appeal provided for by the statute.

There are authorities holding that in case of a public improvement authorized by a statute, in which a mode of redress is provided for persons claiming to be injured in consequence of a failure to obey the provisions of the law in making the improvement, such mode is exclusive, and no right of action exists in their favor except that directed by the statute.   Heiser v. Mayor, etc., 104 N. Y. 68, 9 N. E. 866; People v. Wasson, 64 N. Y. 167; MacLaury v. Hart, 121 N. Y. 636, 24 N. E. 1013.   But in neither of the cases cited did it appear that the persons or officers whose proceedings were sought to be restrained or vacated had acted beyond their jurisdiction; that the act of which the plaintiff complained was void for want of power.   Hence those authorities do not conflict with the doctrine laid down in the case of Hassan v. City of Rochester, supra. In that case an action similar to this, on a similar state of facts, was held properly brought, although chapter 143, Laws 1861, under the provisions of which the public improvement therein considered was authorized, provided for a review of the assessment and an appeal to the supreme court.   Sections 197, 198, and 199 of that act provided that, after an assessment for a local improvement had been made, the common council should give notice that on a certain day they would hear appeals from the assessment, and on the day designated they should hear the allegations and proofs of all persons who should make complaints; and the act provided that the common council might rectify and amend the assessment in whole or in part, or might set it aside, and direct a new assessment, or ratify and confirm it; that any assessment so ratified and confirmed should be final and conclusive.   A right of appeal to the supreme

court was also given. The act in question thus provided a tribunal authorized to hear the allegations and proofs of the parties aggrieved by an assessment, and it contained a further provision that the decision of this tribunal should be final and conclusive.

In his opinion in the Hassan Case, 67 N. Y. 528–537, Judge Miller, referring to the provisions of the said statute, remarked:

"The confirmation by the common council of the assessment in question, after notice under the provisions of the charter, does not, we think, preclude the plaintiffs from the benefit of the equitable relief demanded. The provisions of the charter which relate to the confirmation of assessments (Laws 1861, p. 332, §§ 197–199) vest no authority in that body to confirm an assessment made in violation of an ordinance, and where it is plainly apparent that the assessors have disregarded the same. Such a proceeding of the assessors is unavailing, because they exceeded their powers, and its confirmation cannot infuse into it any element of strength and vitality, or remedy the difficulty. It must fail, because it is inherently defective; nor have the common council power to enact or alter an ordinance of this kind without pursuing the preliminary steps which the charter requires for such a purpose. * * * As the assessors did not comply with the law, and exceeded their authority, and the common council proceeded to confirm an assessment made in violation of the ordinance and without any legal right, there was an excess of power which is fatal to the assessment. The defect in the proceedings was more than an irregularity, and was not obviated by the confirmation of a void proceeding. When the statute makes the confirmation conclusive, it has reference to a valid proceeding, which is sanctioned by law, and is within the jurisdiction of the assessors."

In Elwood v. City of Rochester, 122 N. Y. 229, 25 N. E. 238, an action was sustained, brought to set aside an assessment made upon the plaintiff's lot for a local improvement, although chapter 14, Laws 1880, under the authority of which the assessment was made, had a similar provision for a rehearing before the common council, and for an appeal to the supreme court.

The Hassan and Elwood Cases establish the doctrine that where local authorities, in making a public improvement and assessment, in pursuance of the authority of a statute, act beyond their jurisdiction, a provision in the law for a rehearing by officers named, and for an appeal, does not prevent a party injured from maintaining an equitable action to obtain redress. The provision in such a statute for a rehearing is intended to afford relief in case of irregularities, unequal assessment, or irregular practice on the part of the local officers acting within their power, but not for injuries sustained in consequence of acts beyond the jurisdiction of such officers. Those acts are void, and the decision of the local tribunal authorized to review cannot give them validity. If village authorities, in making a local improvement, acting within the power conferred upon them by statute, in the exercise of their judgment and discretion, err, as in Garratt v. Trustees, supra, the remedy is to be sought by an appeal under the provisions of the statute where an appeal is given, or by certiorari. But, if they materially depart from the authority delegated, they act without jurisdiction, and a right of action is vested in the person injured.

The assessment in question, although in fact void, was on its face valid, and extrinsic evidence would be required to establish its invalidity. It formed a cloud on plaintiff's title, and I think, under well-settled principles, the plaintiff is entitled to the relief it claims.

Without considering other questions raised in this case, I conclude that the judgment should be reversed, the referee discharged, and a new trial granted; costs to abide the event.

PARKER, P. J.    I concur in result.

LANDON, J.    I concur with Mr. Justice PUTNAM, but I desire to remark respecting the contention of the respondents that the plaintiff's remedy is limited to the appeal to the county court prescribed by chapter 266, Laws 1887; that the provision for an appeal has reference to an assessment upon all the lots within the field of assessment designated pursuant to the rule prescribed by the charter.    Here the assessment was not upon all the lots within such a field, but was upon either a portion of them, or upon all the lots of a different field, designated in violation of the statutory rule, or by a departure from it.    It is plain that the appeal prescribed by this statute for the review of errors alleged to have been committed by* the commissioners while acting within the powers conferred upon them by the statute—that is, in making the assessment upon all the lots within the field of assessment designated pursuant to the statutory rule—cannot be so extended as to exclude all other remedies for relief against an attempted assessment of the lots in some other field of assessment.    The commissioners have not been authorized to make this assessment, and the rule of appeal which the statute would attach to their authorized work does not attach to their unauthorized work.    It passes legislative ken to foresee what public officers will do when they wander outside of their powers, and it would be unwise and perhaps unconstitutional for the legislature to attempt, even under the guise of affording a remedy at law, to limit by statute the general equitable jurisdiction of the supreme court in cases where the alleged legal remedy, if successfully invoked, would shield unauthorized assumption of power from correction.    On the face of the record, it appears that no assessment was made upon the persons or property of 10 persons therein named, but it is not stated in the commissioners' report that such persons owned lands along the line of the sewer.    Extrinsic evidence was necessary to show all the material facts respecting the omission of such lands from the assessment.

HERRICK, J. (dissenting).    I dislike to dissent from the conclusion arrived at by the majority of the court, but it seems to me that the plaintiff should be compelled to resort to the remedy provided by statute; otherwise, complete justice cannot be done.    By permitting the maintenance of actions of this kind, where the statute provides a summary remedy by which an assessment can be vacated or corrected, persons will be allowed to escape payment of any part of the expense of public improvements by which they are benefited; whereas, by proceeding under the statute, if there is anything improper or illegal in the assessment, it may be corrected, if necessary vacated, and a new assessment made, and all parties made to bear their just share

of the burden.    Subdivision 7, § 3, c. 266, Laws 1887, being an amend-
ment of the law under which the proceedings for the public improve-
ment in question were taken, provides that an appeal may be taken by
a person considering himself aggrieved to the county court, and that
"upon such appeal the county court may, by an order, affirm, alter,
vacate or correct said report, which order shall be final." · The action
here is to remove a cloud upon the plaintiff's title, created by the as-
sessment in question, and is an action entertained by courts of equity,
when a lien affecting real estate appears on its face to be valid, when
the defect in it can be made to appear only by extrinsic evidence,
which will not necessarily appear in proceedings taken to enforce the
lien.    Crooke v. Andrews, 40 N. Y. 547;   Marsh v. City of Brooklyn,
59 N. Y. 280.    And equity takes cognizance of it because there is no
adequate remedy at law.    Here an adequate remedy is provided by
the very statute under which the lien is created.    The plaintiff seeks
to have the assessment vacated.    The county court is by the statute
authorized to do that very thing.    All the relief to which it is enti-
tled the county court has power to afford.    General authority was
conferred upon the county court to hear all grievances, and there is
nothing to justify us in holding that its power was intended to be con-
fined merely to cases of irregularity or simple mistakes.    The words
used "may, by an order, affirm, alter, vacate or correct," are ample
to include relief for any and all cases that can arise under an assess-
ment, and for any and every cause.    The fact that no procedure was
prescribed by the statute as to the manner in which the county court
should conduct the proceedings authorized makes no difference.
When power to do an act is conferred upon a court, and no practice is
prescribed, it may adopt such practice as it adjudges necessary to en-
able it properly to perform the duty enjoined upon it.    "Presumptive
ly,    *    *    *    whatever judicial procedure is essential to enable courts
to exercise their functions is authorized."    McQuigan v. Railroad Co.,
129 N. Y. 50–52, 29 N. E. 235.    Whatever judicial practice or pro-
ceedings, known to the courts, it might be necessary to take to enable
a party considering himself aggrieved to present his grievance fully
to the court, the county court, I think, might authorize or permit,
whether that consisted in merely bringing up the record, as in certi·
orari, or in taking evidence extrinsic to the record.    That being so,
there is no occasion for equity to interfere.

A court of equity is never at liberty to draw to its general juris-
diction a question remitted to a competent and sufficient authority
by express command of the statute, unless under some very excep-
tional circumstances.    People v. Wasson, 64 N. Y. 167;   McLaury
v. Hart, 121 N. Y. 636–642, 24 N. E. 1013.    See, also, Heiser v. May-
or, etc., 104 N. Y. 68, 9 N. E. 866;   Garratt v. Trustees, 135 N. Y.
436, 32 N. E. 142.    It is not necessary to hold that the statute has
absolutely ousted courts of equity of jurisdiction in the premises,
but the existence of the statute is a reason why such courts should
not exercise their equitable powers.    "The statute having given a
legal remedy, which is adequate, there is no occasion for administer-
ing equitable relief."    Andrews v. Monilaws, 8 Hun, 65;   Sebald
v. Mulholland (Super. N. Y.) 26 N. Y. Supp. 913.

As was said in the case of McLaury v. Hart, 121 N. Y. 636–642, 24 N. E. 1013:

"The present action seeks to withdraw from the tribunal specially clothed with authority to determine the controversy the right to decide it, and has no adequate foundation except distrust of the tribunal. * * * That the statute merely designates the ultimate tribunal, and prescribes its authority, without specifying the practice to be pursued, does not justify an inference that it will proceed in a partial or unjust manner, or contrary to its normal rules of action. There is no reason, therefore, why the statute remedy should not be pursued."

We are not at liberty, it seems to me, to say that a county court is not a competent or sufficient tribunal to deal with the questions involved in this assessment. Neither are there any exceptional circumstances in this case that justify the interference of equity; but there are equitable considerations that, it seems to me, require us to refuse to take cognizance of this class of cases, when there is a statutory remedy provided, except under very exceptional circumstances. If the plaintiff had resorted to the judicial tribunal specifically named in the statute, the assessment could have been corrected as justice required, and the plaintiff, while being compelled to pay its fair and proportionate share of the expense of the improvement, would have been relieved of any excess. The whole assessment would then have been necessarily brought in question, and a fair and legal assessment could have been made. Here the only effect of the plaintiff's succeeding is to relieve it from the assessment. This action does not affect the assessment as a whole. It does not modify or correct it. It simply relieves the plaintiff's property from the lien of the assessment; and, as there is no provision in the law for a reassessment, its necessary result is to relieve the plaintiff from paying any part of the expense of the improvement in question, and compels the village authorities to pay from the general funds that which ought to be paid by those especially benefited by the improvement.

The purpose of the provision of the law providing for an appeal to the county court, and those contained in other local laws relating to municipal improvements, where a specified manner of review is provided, is to provide a summary way of reviewing assessments, and determining their legality, and promptly correcting any errors or mistakes, and readjusting the assessment when necessary, and thus compel all who ought to share in the burden to pay their just share; and the beneficent and equitable purpose of the statute is defeated if a property owner is permitted, long after the assessment is made, and when perhaps every one else has paid, to ignore the statutory remedy provided, and commence his action, not to correct or legalize the assessment, but simply to have that portion of it levied upon his property vacated, and thus entirely relieve himself at the expense of the taxpayers.

In the cases of Hassan v. City of Rochester, 65 N. Y. 513, and Elwood v. City of Rochester, 122 N. Y. 229, 25 N. E. 238, and 43 Hun, 102, the question here discussed was not at all considered, and they therefore are not authorities upon the question.

Neither is the case of Hassan v. City of Rochester, 67 N. Y. 528,

an authority upon this question.    There it was held that a confirmation of the assessment by the common council did not preclude the plaintiff from applying for equitable relief.    In that case the statute (Laws 1861, c. 143, §§ 195–199) provided that, after an assessment had been made, it should be returned to the common council; that public notice thereof should be given; and that the common council should hear all persons who might complain of it, and rectify and amend it in whole or in part, or set it aside, and direct a new assessment, and ratify and confirm it with or without correction, and further provided "that any assessment so ratified and confirmed by the common council shall be final and conclusive." That is hardly, it seems to me, a remedy to review an assessment, but simply part of the machinery by which the assessment is made; and the words "final and conclusive" are used merely in the sense that the assessment was then complete, and that no reassessment could be made.    Miller v. City of Amsterdam, 149 N. Y. 288–299, 43 N. E. 632.

Neither do I think the case of Kinnan v. Railroad Co., 140 N. Y. 183, 35 N. E. 498, is adverse to the position that I have assumed. That was an action in equity to compel the defendant to issue to the plaintiff stock in lieu and in place of certificates of stock that had been lost or mislaid; and it was contended that the court was not at liberty to grant or administer the relief sought, because there was an adequate remedy at law.    For the reason that by an act of the legislature it was provided that one who had lost his stock certificate might apply at a special term of the supreme court for an order to show cause why a new certificate should not be given, and upon such hearing the court might proceed summarily to hear and determine the facts, and make an order to require the company to issue a new certificate upon receiving from the petitioner a bond of indemnity, the court held that that was not a remedy at law; that it was exactly the relief which a court of equity would regularly and habitually award; that the statute merely provided for a summary method of obtaining the same equitable relief that was theretofore granted by courts of equity; and that the statute must be regarded as giving a cumulative, additional, and summary remedy, of a purely equitable character, and to be administered by an equity court.

As heretofore stated, it is not necessary to hold that the statute ousted courts of equity of their jurisdiction, but simply that, with the method of obtaining relief provided by this statute, courts of equity ought not to take cognizance of an action to remove a cloud upon title created by an alleged illegal assessment, unless under very exceptional circumstances, because in the action to remove a cloud upon title relief can only be afforded to one, and that, too, at the expense of others, while under the statute a broader equity can be administered, and justice done to all.    In the case last cited, it was held that the statute merely provided the means of procuring by a summary method the same relief that could theretofore have been administered by a court of equity.    The statute here under consideration goes much further, and enables the county court

to do that which a court of equity, in an action to remove a cloud upon title, cannot do. In the one case, as heretofore stated, the plaintiff in the action simply procures a removal of the lien of the assessment from his premises. Under the other, the county court can do complete equity and justice to all parties,—a fact that the court should take into consideration, and give great weight to, in determining whether it will assume jurisdiction of the case for the sole benefit of the plaintiff, or whether it will remit it to the remedy provided by the statute, where justice can be done, not only to it, but to all others affected by the proceedings under consideration.

This is not a case where the persons charged with making the assessment proceeded without jurisdiction. There is no complaint here that any of the proceedings held prior to the apportioning of the assessment were illegal. Everything appears to have been legally done prior to the apportioning of the expense among and upon the properties benefited. The assessors then had authority— that is, jurisdiction—to make the assessment. The error complained of is in the assessment itself; that is, that it was not apportioned and levied upon all the property benefited, the legislature having, as it is claimed, adjudged that certain described property would be benefited, and provided in the statute that it should be assessed. The assessors having jurisdiction to make the assessment, the illegal or erroneous exercise of that authority does not affect the question of jurisdiction, although it may render the assessment an illegal one. Jurisdiction of the subject-matter is the power to adjudge concerning that matter, and does not depend upon the ultimate determination arrived at, or the means by which such ultimate determination is reached. Hunt v. Hunt, 72 N. Y. 217; Sweet v. Merry, 109 N. Y. 83–94, 16 N. E. 63. It is not a question as to whether the assessors had the legal right to make this assessment that has been made, but whether they had the legal authority to make an assessment of the expenses incurred in the improvement in question. If all the necessary preliminary steps were legally taken, then they had authority to make an assessment, and no subsequent acts of theirs could divest them of that authority. Jurisdiction depends upon the state of affairs when the persons or body seeking to exercise it first commence to act in the premises, and the erroneous or illegal exercise of jurisdiction does not relate back, and deprive the body or persons of the jurisdiction originally vested in it or them. It seems to me, therefore, that the act of the persons making the assessment was not without jurisdiction; that the statute has provided a sufficient remedy, in a competent forum, for the redress of all grievances; and if the plaintiff has neglected or refused to avail itself of the statutory means provided, where a broader equity may be administered, and justice be done to and for all, that there is no reason for a court of equity interfering for its sole benefit, and relieving it from paying any share of the expense of the improvement.

The judgment should be affirmed, with costs.

MERWIN, J., concurs.